UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNIVERSAL TRADING & INVESTMENT          )
COMPANY, INC.,[1]                       )
                                        )
              Plaintiff,                )     CIVIL ACTION NO.
                                        )     10-12015-DPW
v.                                      )
                                        )
BUREAU FOR REPRESENTING UKRAINIAN       )
INTERESTS IN INTERNATIONAL AND          )
FOREIGN COURTS; UKRAINIAN               )
PROSECUTOR GENERAL'S OFFICE; and        )
THE REPUBLIC OF UKRAINE,                )
                                        )
              Defendants.               )

MEMORANDUM AND ORDER
REGARDING SUMMARY JUDGMENT
June 1, 2022

---

[1] The Complaint originally listed Foundation Honesty International, Inc. as a Plaintiff, but its claims were dismissed at the motion to dismiss stage of the case and it has not subsequently been involved in the litigation. *See Universal Trading & Inv. Co.* v. *Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F. Supp. 2d 301, 326 (D. Mass. 2012) (*UTICo I*), *aff'd*, 727 F.3d 10 (1st Cir. 2013)(*UTICo II*).

Table of Contents

I.  BACKGROUND.................................................... 5
  A.  Factual Background ....................................... 5
    1.  The Contractual Relationship Between the Parties ....... 5
    2.  UTICo's Actions Under the May 1998 Agreement ........... 8
    3.  The California Assets .................................. 8
    4.  The Swiss Assets ...................................... 11
  B.  Procedural Background ................................... 15
II. PRELIMINARY MATTERS.......................................... 18
  A.  Motion for Sanctions .................................... 18
  B.  Motion to Amend Complaint ............................... 19
  C.  Motion to Compel ........................................ 21
  D.  Motion to Amend Discovery Schedule ...................... 21
  E.  Rule 56(d) Motion ....................................... 22
III. UKRAINE'S MOTION FOR SUMMARY JUDGMENT...................... 23
  A.  Standard of Review ...................................... 23
  B.  Ukraine's Substantive Contentions ....................... 25
    1.  Prior Adjudications ................................... 26
      a.  Collateral Estoppel ................................ 26
      b.  Law of the Case .................................... 28
    2.  Statute of Limitations ................................ 30
      a.  Accrual ............................................ 32
      b.  Tolling ............................................ 36
       i.  Inherent Knowability .............................. 37
      ii.  Duty to Disclose ................................. 39
      iii.  Fraudulent Concealment .......................... 40
    3.  Performance Under the Contract ........................ 41
      a.  Interpreting the Agreement ......................... 41
      b.  Evidence that UTICo Assisted in Recovery ........... 43
       i.  Vagueness in UTICo's Argumentation ................ 43
      ii.  Documents Flagged by UTICo ....................... 44
      iii.  Lambert Declaration ............................. 45
      iv.  Letter to the President of Ukraine ............... 47
      v.  Analysis ........................................... 47
      c.  Role in Recovery of Swiss Assets ................... 48
IV. UTICo'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT.......... 50
  A.  Ukraine's Motion to Strike .............................. 50
  B.  Cross-Motion Merits ..................................... 51
    1.  Scope of the Cross-Motion ............................. 52
    2.  Standard of Review .................................... 52
    3.  UTICo's Arguments ..................................... 53
      a.  Existence of Agreement ............................. 53
      b.  Alleged Admission .................................. 54
      c.  Ukrainian Supreme Court Ruling ..................... 57
V. CONCLUSION................................................... 59

In the late 1990s, the Ukrainian Prosecutor General's Office authorized Universal Trading & Investment Company, Inc. ("UTICo") to assist it in recovering assets that Ukrainian officials, including Peter Kiritchenko and Pavlo Lazarenko, were alleged to have stolen from Ukraine. Their agreement provided that the Ukrainian Prosecutor General's Office would give UTICo a commission of 12% on certain assets returned to Ukraine "in connection with" this agreement. Some assets have been returned to Ukraine, and UTICo seeks a 12% commission. In the motion for summary judgment now before me, Ukraine[2] contends that UTICo did not assist in recovering those assets, so it is not owed any commission. In any event, Ukraine argues, the statute of limitations for bringing these claims ran before suit was filed.

During motion to dismiss practice, I determined that the exercise of jurisdiction over Ukraine in this context was proper and allowed UTICo's claim for breach of contract to move forward. *See Universal Trading & Inv. Co.* v. *Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F. Supp. 2d 301, 316-17, 321 (D. Mass. 2012) (*UTICo I*). The

---

[2] While I will use "Ukraine" to refer collectively to the three defendants, the three are, however, distinguishable. The Republic of Ukraine is a country in Eastern Europe. The Ukrainian Prosecutor General's Office is a prosecutorial agency in the Republic of Ukraine. The Bureau for Representing Ukrainian Interests in International Courts is an affiliate of the Ukrainian Ministry of Justice.

Court of Appeals affirmed.  *Universal Trading & Inv. Co.* v. *Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 727 F.3d 10, 12 (1st Cir. 2013) (*UTICo II*).

Successive summary judgment practice determined that the breach-of-contract claim was only ripe for adjudication as to $15 million in assets ("the Swiss assets") that had actually been repatriated from Switzerland to Ukraine.

Ukraine has moved for summary judgment with respect to that breach-of-contract claim.  UTICo opposes Ukraine's motion and has filed a motion under Federal Rule of Civil Procedure 56(d), saying it lacks sufficient discovery to litigate summary judgment and consequently summary judgment should be denied.  UTICo then belatedly filed its own cross-motion for partial summary judgment.  UTICo also presses motions to amend its complaint to compel additional document production, and to amend the discovery schedule.  Meanwhile, I have pending before me as well a motion for sanctions that Ukraine has brought against UTICo.

Ultimately, because UTICo's claims are a combination of the untimely and the unsubstantiated, I will grant Ukraine's motion for summary judgment and deny the summary judgment motion of UTICo.  I will deny UTICo's several motions variously to amend the complaint, to compel additional discovery, and to amend the discovery schedule, all of which seek to revisit matters that

4

have already been decided in this lengthy litigation.  I will thereupon deny UTICo's Rule 56(d) motion for relief.  Finally, I will deny Ukraine's motion for sanctions as moot.

## I.   BACKGROUND

### A.   *Factual Background*[3]

The factual context for this case is set forth extensively both in my prior Memorandum and Opinion addressing the motion to dismiss, *UTICo I*, 898 F. Supp. 2d at 304-308, and in the First Circuit's opinion affirming that decision, *UTICo II*, 727 F.3d at 12-15.  I will recount the pertinent background here, focusing on the facts relevant to the disposition of the breach-of-contract claim now ripe for determination.

#### 1.   The Contractual Relationship Between the Parties

The plaintiff, UTICo, is a Massachusetts corporation founded in 1993.  The defendants do not dispute that in the 1990s a Ukrainian corporation that eventually became known as United Energy Systems of Ukraine hired UTICo to recover assets

---

[3] On the record before me, the facts material to the motions for summary judgment are not essentially in dispute.  To be sure, UTICo has reflexively objected to every paragraph of Ukraine's statement of undisputed material facts in connection with Ukraine's motion, but its objections are focused almost exclusively on advancing legal arguments relating to the motion for summary judgment, rather than to the facts themselves.  This is a failure to comply with Local Rule 7.1.  Consequently, I have, for the most part, drawn the factual background from Ukraine's statement of material facts, and, where appropriate, from the documents of record.

from various jurisdictions around the world.  While working with
United Energy Systems, UTICo discovered that Pavlo Lazarenko,
then the First Deputy Prime Minister and eventually the Prime
Minister of Ukraine, was using the company to siphon money owed
to the Ukrainian government and transfer it to his personal
offshore accounts.  With a view toward helping the Ukrainian
government recover these stolen assets, UTICo informed the
Ukrainian Prosecutor General's Office and other Ukrainian
agencies of Mr. Lazarenko's actions.

As a result of that interaction, on May 15, 1998, the
Acting Prosecutor General of Ukraine hired UTICo to help the
Ukrainian Prosecutor General's Office recover assets related to
United Energy Systems and its parent company, United Energy
International, Ltd.  The Agreement and an accompanying Power of
Attorney[4] regarding particular assets - memorialized in a May 15,
1998 letter sent from the Acting Prosecutor General of Ukraine
to George Lambert, the president of UTICo - stated that UTICo
"will be attributed a commission of 12 (twelve) percent on all
and any above assets to be returned to Ukraine, in connection
with the Power of Attorney of the Prosecutor General's Office"
that was executed along with the Agreement.  The May 1998
Agreement also stated that "remuneration is not payable from the

---

[4] The Power of Attorney was executed the day before, on May 14,
1998.

State budget of Ukraine but from the assets to be repatriated to Ukraine from outside of Ukraine."

In August and September of 1998, the Ukrainian Prosecutor General's Office executed two additional agreements related to the May 1998 Agreement giving Powers of Attorney to UTICo with respect to the assets of several corporations through which Ukraine believed Mr. Lazarenko and others had laundered Ukrainian assets.

On October 2, 1998, M.A. Potebenko, then the Prosecutor General of Ukraine, sent a letter to Mr. Lambert to "certify the previously agreed terms in regard to the unlawful assets outside of Ukraine."  In the two years following that letter, the Ukrainian Prosecutor General's Office executed additional Powers of Attorney to UTICo.  All of the powers of attorney between the parties provided that they were valid for one year from the date issued, but that validity would be prolonged for the duration of any judicial procedures initiated outside of Ukraine with respect to the assets encompassed by that power of attorney.

In August 1999, M.S. Obykhod, as Deputy Prosecutor General of Ukraine, wrote to Mr. Lambert to recognize "the work accomplished by, and the assistance from, your company."  Among other things, the letter confirmed that UTICo would be entitled to "12% of all funds returned to Ukraine from outside of its borders with the assistance of UTICo."  Enclosed with the letter

was a document purportedly assigning to UTICo Ukraine's claims against certain real property in the United States that "possibly belong[ed] to Ukrainian citizens P.M. Kiritchenko, members of his family, P.I. Lazarenko, and 4 Californian companies controlled by the above persons."

### 2.   UTICo's Actions Under the May 1998 Agreement

Ukraine does not contest that between 1998 and 1999, UTICo was investigating and freezing millions of dollars around the world that had been expatriated from Ukraine.

### 3.   The California Assets

During its investigation on behalf of Ukraine in 1999, UTICo learned that certain of the expatriated assets had been used to purchase real estate in California.  On April 13, 1999, the Ukrainian Prosecutor General's Office sent a letter as amicus curiae on UTICO's behalf to the United States District Court for the Northern District of California explaining that Mr. Kiritchenko was being prosecuted in Ukraine and that the assets held by Mr. Kiritchenko in the United States were the proceeds of expatriated assets.  The letter stated that "the Prosecutor General Office of Ukraine supports suit of UTICo to attach all realty of Petro M. Kiritchenko on the territory of the USA, which was acquired by him for proceeds from crime." The Ukrainian Prosecutor General's Office also gave UTICo Power of Attorney to pursue these assets in the United States.

UTICo had filed suit against Mr. Kiritchenko and Mr. Lazarenko, among others, in the Northern District to attach property that represented the proceeds of those assets.  In response to the Court's concern that UTICo lacked standing to bring suit on behalf of the Ukrainian Prosecutor General's Office, Mr. Obykhod, as Deputy Prosecutor General of Ukraine, sent UTICo a letter dated August 11, 1999, that purported to assign "the material claims upon the real estate property" in the United States to allow UTICo to "be able to prove the unlawful ownership thereof in your U.S. District Court."

In response, Mr. Kiritchenko filed suit in Ukraine against the Ukrainian Prosecutor General's Office, arguing that the Assignment and Power of Attorney were invalid under Ukrainian law.  *See Universal Trading & Inv. Co. v. Kiritchenko (Kiritchenko I)*, No. C-99-3073-MMC, 2007 WL 2669841, at *2 (N.D. Cal. Sept. 7, 2007), *aff'd sub nom. Universal Trading & Inv. Co. v. Kiritchenko (Kiritchenko II)*, 346 F. App'x 232 (9th Cir. 2009) (describing the litigation in Ukraine).[5]  The Pechersk court[6] in Kiev invalidated the Assignment under Ukrainian law but

_____

[5] Because I ultimately rely on the judgment entered in the Northern District of California, I have cited to Judge Chesney's opinion for details regarding the Kiritchenko litigation in the Ukrainian courts.

[6] The Pechersk court is variously referred to as a "Regional," "District," or "Municipal" court in the record before me.  For example, the Ukraine Supreme Court refers to the Pechersk District Court for the City of Kyiv as the "Pechersk municipal

rejected Mr. Kiritchenko's claim as time-barred.  *Id.*
Subsequently, both parties sought to appeal this judgment, but
the intermediate appellate court affirmed, and neither party
pursued an appeal to the Ukraine Supreme Court.[7]  *Id.*

Mr. Lazarenko also filed suit in the Pechersk court against
the Ukrainian Prosecutor General's Office to invalidate the
Assignment and Power of Attorney.  *Id.* at *4.  On September 3,
2003, the Pechersk court again invalidated the Assignment and
Power of Attorney under Ukrainian law, holding that the
Ukrainian Prosecutor General's Office did not have the authority
to assign claims or issue powers of attorney to anyone.  *Id.*  On
June 14, 2006, the Supreme Court of Ukraine annulled the
decision of the Pechersk court and remanded the case for further
proceedings because, in the words of the Ukrainian Supreme
Court, the municipal court "disregarded the respective legal
status of [UTICo]" and "the court failed to provide for bringing
in that proceeding [UTICo] giving it the capacity of a
respondent."  [Dkt. No. 104-9 at 33] The Pechersk court refused
to consider the case on remand "because the properly informed

---

court."  In the California litigation, Judge Chesney refers to
the court as the "Pechersk court."  For the sake of uniformity,
I adopt that usage.

[7] Mr. Kiritchenko did file an appeal with the Ukraine Supreme
Court but later withdrew it.  *Kiritchenko*, 2007 WL 2669841 at
*2.

representative [of Mr. Lazarenko] repeatedly did not come to the court session."

In any event, on September 7, 2007, in UTICo's suit against Mr. Kiritchenko in the Northern District of California, Judge Chesney held that UTICo lacked standing and granted summary judgment for Mr. Kiritchenko. *Kiritchenko I*, 2007 WL 2669841 at *20-21. Judge Chesney found that UTICo lacked standing under the August 11, 1999 letter because that letter was not a valid assignment. *Id.* at 20. She also found that UTICo did not have standing under the other powers of attorney - including the May 14, 1998 power of attorney, or under the May 15, 1998 Agreement - to bring suit on Ukraine's behalf, because a power of attorney is not an assignment of ownership "enabl[ing] the grantee to bring suit in his own name." *Id.* at 21. The Ninth Circuit affirmed the decision, holding that "[UTICo] failed to prove a deputy prosecutor general had the authority to assign the rights of the Ukrainian government against Kiritchenko and Lazarenko to [UTICo]." *Kiritchenko II*, 346 F. App'x at 232-33.

### 4. The Swiss Assets

During the course of UTICo's investigations, it developed evidence that both Mr. Kiritchenko and Mr. Lazarenko held assets at various Swiss banks in Geneva, including Credit Suisse and Banque Populaire Suisse (which later merged with Credit Suisse). Meanwhile, on December 12, 1998, the Ukrainian Prosecutor

General's Office sent letters rogatory seeking the assistance of
Swiss authorities in the criminal prosecutions of Mr.
Kiritchenko and Mr. Lazarenko.  In particular, the Ukrainian
Prosecutor General's Office sought documents relating to various
corporations created and owned by Mr. Kiritchenko and Mr.
Lazarenko that held assets in Swiss banks.  On May 7, 1999, the
Ukrainian Prosecutor General's Office sent another letter
rogatory to the Federal Police Office in Geneva "express[ing]
[its] gratitude for the provision of mutual legal assistance,"
verifying that the Ukrainian prosecution "has no political
purpose," and seeking more documents concerning bank accounts in
Swiss banks.

The Swiss government had earlier started its own
investigation into assets held by Mr. Kiritchenko and Mr.
Lazarenko in Switzerland.  There is no evidence of record that
UTICo participated directly in the Swiss investigation by
providing documents or information to the Swiss authorities, or
that UTICo filed anything in Swiss courts.  There is also no
evidence in the record before me to suggest that the Ukrainian
Prosecutor General's Office helped the Swiss authorities during
the course of the investigation.

On June 25, 1999, the Swiss Federal Tribunal denied a
request by various entities controlled by Mr. Kiritchenko and
Mr. Lazarenko to lift an administrative freeze of their assets

held in Switzerland.  The opinion detailed the evidence
transmitted from the Ukrainian Prosecutor General's Office to
the Swiss authorities along with the letters rogatory.  It also
detailed the investigation carried out by the Swiss
investigating judge in Switzerland.

On June 28, 2000, the Court of Police in Geneva found Mr.
Lazarenko guilty of money laundering and ordered him to pay
approximately 10,700,000 Swiss francs to the State of Geneva
("June 2000 Swiss Court Judgment").  The opinion regarding the
June 2000 Swiss Court Judgment specifically referenced a
deposition conducted by the Swiss Investigating Judge in the
United States on May 15, 2000.  The opinion also reported that
Mr. Lazarenko had admitted "the facts for which he has been
charged" in open court in Geneva on June 9, 2000.

On August 30, 2000, the Attorney General of Geneva issued a
Condemnation Ruling against Mr. Kiritchenko, finding him guilty
of committing acts "aimed at preventing the identification of
the source, discovery, or confiscation of assets coming from a
crime."  The order required Mr. Kiritchenko to pay a fine of 1
million Swiss francs and ordered the transfer of his assets held
at Credit Suisse and Banque CSC Alliance in Geneva to Ukraine.[8]

---

[8] The order listed the account numbers of the specific accounts
in which these assets were held.  At least some of these
accounts were identified and subpoenaed as part of an
investigation by the Attorney General of Geneva into crimes of

As a result of these two proceedings in Geneva, roughly 15 million in 2019 dollars was seized by Swiss authorities and returned to Ukraine.  In particular:

- Approximately 10,500,000 Swiss francs seized as a result of the June 2000 Swiss Court judgment was transferred to Ukraine in October 2000.  This money was transferred to the Ukrainian Treasury in March 2001.

- Approximately $4,058,000 seized by Swiss authorities as a result of the August 2000 Swiss Court judgment was transferred to Ukraine in October 2000.  This money was transferred to the Ukrainian Treasury on March 18, 2009.

- Approximately $1,744,980 was transferred to Ukraine from a Swiss account; the parties disagree as to whether this money was voluntarily returned or returned as a result of the August 2000 Swiss Court Judgment.  In any event, this money was transmitted to the Ukrainian Treasury in April 2002.

---

money laundering.  Only two account numbers, no. 5452 and no. 5383, were specifically mentioned as having been transmitted from the Ukrainian Prosecutor General's Office to the Swiss authorities along with the letters rogatory.

### B.    *Procedural Background*

On November 26, 2010, UTICo filed this suit against the Ukrainian Prosecutor General's Office, the Bureau for Representing Ukrainian Interests in International and Foreign Courts, and the Republic of Ukraine (collectively "Ukraine," *see supra* note 2).  Foundation Honesty International, Inc. also sued alongside UTICo.  The original complaint sought damages for breach of contract under the 1999 California Assignment, breach of contract under the original May 1998 Agreement, unjust enrichment, breach of fiduciary duty, misrepresentation, and negligence.  Ukraine filed a motion to dismiss the complaint in its entirety on August 19, 2011.

After a significant back-and-forth, including a motion for partial summary judgment by Foundation Honesty International, Inc., on September 19, 2012, I granted in part and denied in part Ukraine's motion to dismiss.  *See UTICo I*, 898 F. Supp. 2d at 301.  Specifically, I held that I had jurisdiction to hear UTICo's claims against Ukraine under the commercial activity exception to sovereign immunity under the Foreign Sovereign Immunities Act, *id.* at 316-17, but I dismissed the majority of the Counts in the Complaint for failure to state a claim.  *Id.* at 326.  I also dismissed Foundation Honesty International as a plaintiff.  *See supra* note 1.

Ukraine appealed my judgment, and I stayed discovery in this court pending the outcome of that appeal. On August 12, 2013, the First Circuit affirmed. *UTICo II*, 727 F.3d at 10. Consequently, the only claims remaining in the case are those for breach of contract under the original May 1998 Agreement and for declaratory judgment. To date, UTICo has not pursued the declaratory judgment count, choosing instead to focus on its claim for damages under a breach-of-contract theory.

On October 4, 2013, I held a status conference to set a schedule for further proceedings. At the conference, I limited discovery to the question whether the statute of limitations had run on the breach-of-contract claim, and I delayed any further discovery and motion practice until that question had been resolved. On May 2, 2014, both parties filed motions for summary judgment. On February 18, 2015, after hearing arguments on the cross-motions for summary judgment, I denied UTICo's motion because it did not directly address the statute-of-limitations question. I took Ukraine's motion under advisement.

During the hearing, I also found that, apart from the litigation in the Northern District of California, UTICo had not taken any action under the May 1998 Agreement after 2000. In addition, I explained that I would follow the First Circuit's determination that Ukraine was not required under the May 1998 Agreement to reappropriate assets once they had been frozen.

16

Following that hearing, on March 4, 2015, UTICo filed a motion to amend its complaint, purportedly to include allegations for breach of good faith and fair dealing.  The parties also continued to conduct discovery on the statute-of-limitations question and submitted supplemental briefing on the issue.

On May 16, 2018, I again conducted a hearing on the motion for summary judgment with respect to the statute-of-limitations defense.  During the hearing, I denied Ukraine's pending motion for summary judgment.  I also denied the motion to amend the complaint, because that motion was presented over four years after initiation of this litigation and did not meaningfully explain the theory of good faith and fair dealing or even attach a proposed complaint.  I concluded that any claim for breach of contract under the May 1998 Agreement only became ripe when the assets located and frozen by UTICo were actually repatriated to Ukraine.  Consequently, I limited the breach-of-contract claim to the roughly $15,000,000 seized and returned to Ukraine by Switzerland as a result of the June and August 2000 Swiss judgments.

On February 8, 2019, Ukraine submitted the motion for summary judgment now before me on both the statute-of-limitations issue and on the merits of the breach-of-contract claim.  On February 28, 2019, UTICo filed both an opposition to the motion for summary judgment and a motion for relief under

Fed. R. Civ. P. 56(d), arguing that it lacked sufficient
evidence to defend against Ukraine's motion for summary
judgement.

Once briefing for the Ukraine summary judgment motion
practice concluded, on a parallel track, the parties filed their
proposed findings of fact and conclusions of law in anticipation
of proceeding to trial.  The parties also filed trial memoranda.
To the degree these pre-trial materials provide or refer to
record evidence, I have considered their material in connection
with summary judgment practice.  Nothing submitted in connection
with UTICo's own belated cross-motion for summary judgment has
materially developed the factual record further.

## II. PRELIMINARY MATTERS

Before turning to the motions for summary judgment from
both parties, I must address several preliminary matters:
Ukraine's motion for sanctions and UTICo's motions to amend its
complaint, to compel further document production, to amend the
discovery schedule, and for protection under Rule 56(d).

### A.   *Motion for Sanctions*

On January 25, 2019, Ukraine moved for sanctions against
UTICo for various failures to comply with Magistrate Judge
Boal's discovery orders.  Magistrate Judge Boal produced a
Report and Order on this matter.  Because I will grant summary
judgment to Ukraine without imposing any of the proposed

sanctions, the sanctions Ukraine seeks are effectively moot and UTICo's objections will be denied.  *See infra* Section III.

**B.   *Motion to Amend Complaint***

On June 17, 2019, UTICo moved to amend its complaint, its third such motion.[9]  Although Federal Rule of Civil Procedure 15(a) instructs that I should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), this decision is within my discretion, *Momenta Pharm., Inc.* v. *Amphastar Pharm., Inc.*, No. 11-cv-11681-NMG, 2014 WL 298035, at *2 (D. Mass. Jan. 24, 2014) (citing *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).  "[A]mendments may be denied for several reasons, including 'undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment.'"  *Hagerty ex rel. United States* v. *Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (quoting *United States ex rel. Rost* v. *Pfizer, Inc.*, 507 F.3d 720, 733-34 (1st Cir. 2007), *overruled on other grounds by Allison Engine* v. *United States ex rel. Sanders*, 553 U.S. 662 (2008)).  I find that UTICo's complaint would be futile – and I am hardly prepared in any event to allow for an amended

---

[9] I previously, on April 4, 2013, denied a motion to amend from UTICo, in order to await a decision by the First Circuit regarding UTICo's appeal.  [Dkt. No. 75.]  I denied another motion to amend from UTICo on May 16, 2018; I treated that motion as moot because it related to pursuit of an unsuccessful motion for summary judgment.  [Dkt. No. 163.]

complaint at such a late stage of litigation that has been drawn out over many years.

First, UTICo's new claim for breach of the implied covenant of good faith and fair dealing [Dkt. No. 259-1 at ¶¶ 152-161] must fail in light of previous rulings by me and the First Circuit.  This claim rests on the theory that Ukraine has failed to repatriate assets that UTICo tracked down, and that by not repatriating these funds, Ukraine is denying UTICo a commission. The First Circuit already addressed this issue in its interlocutory order, determining that Ukraine could choose not to repatriate funds.  *UTICo II*, 727 F.3d at 22.  And I explained at the May 16, 2018 hearing that I am bound by this holding. [Dkt. No. 168, 25:7-12.]

Second, UTICo makes claims under the alleged assignment involved with the California assets.  *See supra* Section I.A.3. I have previously explained that the Northern District of California and the Ninth Circuit found this assignment invalid, and so UTICo cannot be entitled to any funds pursuant to it.

Third, the addition of a "fraudulent concealment" claim and a declaration from a purported expert [Dkt. No. 259-1 at ¶¶ 184-190] serves to do nothing but revisit previous discovery disputes.  With this addition, UTICo suggests Ukraine withheld Ukrainian court documents.  As I address next, Magistrate Judge

Boal has already addressed similar arguments in relation to UTICO's motion to compel and found Ukraine cooperative.

### C.    *Motion to Compel*

On December 18, 2018, UTICo filed a motion to compel Ukraine to produce additional documents, claiming Ukraine did not produce all documents responsive to its discovery requests. Magistrate Judge Boal denied UTICo's motion in an order dated January 15, 2019.  UTICo objected to the order and I subsequently accepted further briefing from the parties.

When reviewing an order by a magistrate judge on a nondispositive matter, I should "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  UTICo points me to no clear error or anything contrary to law in Magistrate Judge Boal's order – nor do I see any such issues.  I thus leave Magistrate Judge Boal's order in place and compel no further discovery.

### D.    *Motion to Amend Discovery Schedule*

On December 28, 2018, UTICo filed a motion for extension of discovery and the discovery schedule, arguing again that Ukraine had failed to produce all documents responsive to UTICo's discovery requests.  On January 15, 2019, Magistrate Judge Boal issued an electronic order denying this motion, given that it was "largely based on" the same argument presented in UTICo's

motion to compel, which Magistrate Judge Boal denied in the
written order described above.  UTICo objected to this
order as well, and I accepted further briefing from the parties.
Once again, having found no legal error in the motion-to-compel
order, I likewise I find no error here and leave Judge Boal's
order in place and do not extend discovery.  *See* Fed. R. Civ. P.
72(a).

### E.    *Rule 56(d) Motion*

On February 28, 2019 – following Ukraine's motion for
summary judgment - UTICo filed a motion for relief under Federal
Rule of Civil Procedure 56(d).  Under this rule, "[i]f a
nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its
opposition," I may issue an appropriate order, such as an
extension of time for discovery.  UTICo's motion fails out of
the gate because UTICo does not include an affidavit or
declaration, as explicitly required by Rule 56(d).  And even if
the motion fulfilled this requirement, I would still deny it.

First, looking beyond the abject failure to include a
declaration of affidavit, most of evidence that UTICo says it
needs was the subject of motions to compel that Magistrate Judge
Boal denied.  A Rule 56(d) affidavit "is not the appropriate
vehicle for relitigating discovery disputes."  *Gordon* v.
*EarthLink, Inc.*, No. CV 14-14145-FDS, 2017 WL 3203385, at *7 (D.

Mass. July 27, 2017).  UTICo says that circumstances have changed because it found a judgment by a Ukrainian court related to this matter that was adverse to the Ukrainian Prosecutor General's Office and may have been reversed on appeal.  UTICo suggests this means that Ukraine has withheld court documents subject to discovery, because no records regarding such a reversal were provided.  I reject this contorted argument as an obvious last-ditch attempt to revisit issues that have been resolved.  Magistrate Judge Boal has already found Ukraine compliant with UTICo's discovery requests despite numerous attempts by UTICo to portray Ukraine as uncooperative.

Second, I cannot take seriously UTICo's only request that was not denied in a prior discovery order.  This request asks to depose the defendants.  But UTICo voluntarily chose to cancel depositions it had scheduled with the defendants in January 2019.  UTICo already had the opportunity to pursue these depositions and chose not to do so.

Third, UTICo fails to show what further discovery would accomplish.  As noted, UTICo has previously accused Ukraine of non-compliance in discovery, and yet Magistrate Judge Boal has found Ukraine to have fulfilled its duties.

### III. UKRAINE'S MOTION FOR SUMMARY JUDGMENT

**A.  *Standard of Review***

Under Federal Rule of Civil Procedure 56, "[t]he court

shall grant summary judgment if the movant shows that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A factual dispute is material if it "might affect the
outcome of the suit under the governing law," and a dispute is
genuine if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  *Anderson* v. *Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Farmers Ins.
Exch.* v. *RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).

As a general matter, "a party seeking summary judgment
always bears the initial responsibility of informing the
district court of the basis for its motion and identifying those
portions of [the record] which it believes demonstrate the
absence of a genuine issue of material fact."  *Celotex Corp.* v.
*Cartett*, 477 U.S. 317, 323 (1986).  Once the movant has made
such a showing, the burden of production shifts to the nonmovant
to "present definite, competent evidence to rebut the motion,"
*Vineberg* v. *Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008)
(quoting *Iverson* v. *City of Boston*, 452 F.3d 94, 98 (1st Cir.
2006)), and show a "trialworthy issue persists," *id.* (quoting
*Mesnick* v. *Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)).

A party asserting that a fact is or is not genuinely in
dispute must support that assertion by "citing to particular
parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

24

While I must draw all reasonable inferences in favor of the non-moving party, I may not rely on "[u]nsupported allegations and speculation," which "do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment." *Devine* v. *Woburn Police Dep't*, No. 14-cv-13179-MBB, 2016 WL 5746348, at *3 (D. Mass. Sept. 30, 2016) (quoting *Rivera-Colón* v. *Mills*, 635 F.3d 9, 12 (1st Cir. 2011)); *see also Serra* v. *Quantum Servicing, Corp.*, 747 F.3d 37, 39-40 (1st Cir. 2014) ("[A]llegations of a merely speculative or conclusory nature are rightly disregarded . . . .").

## B.  *Ukraine's Substantive Contentions*

Ukraine has moved for summary judgment on both the statute-of-limitations defense and on the merits of UTICo's underlying breach-of-contract claim.

Ukraine argues that UTICo's claim for compensation under the May 1998 Agreement regarding the Swiss assets is time-barred because the assets were returned from Switzerland to Ukraine in 2000.  Accordingly, Ukraine contends that even if the assets were not sent to the Ukrainian Treasury until a few years later, this lawsuit is well outside the six-year limitations period. Ukraine also argues that UTICo cannot toll the statute of limitations under the discovery rule because it knew or should

25

have known that the Swiss assets had been returned to Ukraine at some point prior to 2004.

On the merits, Ukraine argues that UTICo did not assist in the recovery of the Swiss assets, and consequently it is not entitled to compensation under the May 1998 Agreement.

Through the long travel of this case (and because the parties have previously litigated similar issues in other courts), the scope of the present summary judgment motion has been narrowed.  I will therefore briefly address at the outset the impact of prior adjudications to explain issues that have previously been resolved, before turning to the remaining issues raised by the present motion for summary judgment.

     1.   <u>Prior Adjudications</u>

         *a.  Collateral Estoppel*

Collateral estoppel, or issue preclusion, can be deployed by either party to prevent the other from re-litigating an issue of fact or law that it argued and lost in an earlier proceeding. *Vargas-Colón* v. *Fundación Damas, Inc.*, 864 F.3d 14, 25 (1st Cir. 2017).  Collateral estoppel "applies when '(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.'"  *Mercado-Salinas* v. *Bart Enterprises Int'l,*

*Ltd.*, 671 F.3d 12, 21-22 (1st Cir. 2011) (quoting *Rodríguez-García* v. *Miranda-Marín*, 610 F.3d 756, 770 (1st Cir. 2010)).

Collateral estoppel may apply even if only one of the parties was part of the earlier proceeding, in which case the doctrine is termed nonmutual collateral estoppel. *Rodríguez-García*, 610 F.3d at 770-71. For nonmutual collateral estoppel, the party against whom the doctrine is asserted must have had a "full and fair opportunity for judicial resolution of the same issue." *Id.* (quoting *Fiumara* v. *Fireman's Fund Ins. Cos.*, 746 F.2d 87, 92 (1st Cir. 1984)).

UTICo argues that it did not have a full and fair opportunity to litigate the August 11, 1999 assignment in the California litigation because Ukraine "concealed the critically important decisions of Ukraine's Supreme Court of March 24 and June 14, 2006 and the final decisions reversing the grant of relief to Lazarenko." Judge Chesney found this to be a poor argument when she denied UTICo's Motion for Relief from Judgment on June 16, 2008. *Universal Trading & Inv. Co.* v. *Kiritchenko*, No. C-99-3073 MMC (EDL), 2008 WL 2445073, at *2 (N.D. Cal. June 16, 2008). Judge Chesney found that UTICo "failed to show any failure to disclose those [Ukrainian Supreme Court] decisions affected, in any manner, [her] determination of the issues addressed in the Summary Judgment Order." *Id.* I concur.

I consider myself precluded from reconsidering the validity of the 1999 Assignment by the decision of the Northern District of California, as affirmed by the Ninth Circuit.  *See Kiritchenko I*, 2007 WL 2669841, at *20; *Kiritchenko II*, 346 F. App'x at 232; *see also UTICo I*, 898 F. Supp. 2d at 319 (previously finding myself precluded from reconsidering validity of the 1999 Assignment).  The claims presented to the Northern District of California were framed somewhat differently from the ones before me here, but the question of the validity of the Assignment was the focus of the California litigation and was finally decided by a valid and binding judgment of an American federal court adverse to UTICo.  *See Kiritchenko I*, 2007 WL 2669841, at *20; *Kiritchenko II*, 346 F. App'x at 232. Consequently, I am bound to give full effect to the judgment of the Northern District of California and will treat the 1999 Assignment as invalid.  *See UTICo I*, 898 F. Supp. 2d at 319.

> b.   *Law of the Case*

Issue preclusion is not the only doctrine involving prior adjudication that limits the scope of my inquiry in connection with the present motion.  "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *United States* v. *Moran*, 393 F.3d 1, 7 (1st

Cir. 2004) (quoting *Arizona* v. *California,* 460 U.S. 605, 618 (1983)).

There are two branches to the law of the case doctrine. The first branch "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." *Id.* The second branch "contemplates that a legal decision made at one stage" of a case is the law for the remainder of the litigation, unless a higher court modifies or overrules the decision. *Id.*

I have discretion not to apply prior decisions if the application of the prior holding would be "clearly erroneous and would work a manifest injustice." *Arizona* v. *California*, 460 U.S. 605, 618 & n.8 (1983). For example, such circumstances may arise where a prior ruling was made on an inadequate record or a material change has occurred in controlling law. *Ellis* v. *United States*, 313 F.3d 636, 647-48 (1st Cir. 2002).

During the motion to dismiss stage of this litigation, I determined that UTICo's breach-of-contract claim was governed by Massachusetts law and consequently that it was subject to a six-year limitations period. *UTICo I*, 898 F. Supp. 2d. at 318, 320. The limitations period was not an issue on appeal to the First Circuit. *See UTICo II*, 727 F.3d at 15. I also determined during the initial summary judgment phase that any claim for breach of contract under the May 1998 Agreement became ripe only

when assets that were located and frozen by UTICo were actually repatriated to Ukraine and that the breach-of-contract claim was therefore limited to the Swiss assets.[10]  In addition, I found based on the factual record before me that apart from the litigation in the Northern District of California, UTICo did not perform under the May 1998 Agreement after 2000.

At this juncture, neither UTICo nor Ukraine has sought to challenge my prior rulings; nor has either party indicated that the application of these rulings is "clearly erroneous and would work a manifest injustice."  *See Arizona*, 460 U.S. at 618.  Consequently, in accordance with the law of the case, I will not reconsider my prior rulings here.

### 2.   Statute of Limitations

Ukraine argues that UTICo's breach-of-contract claim is barred by the statute of limitations because it was brought more than six years after the cause of action began to accrue.  *See* Mass. Gen. Laws ch. 260 § 2.  UTICo filed suit on November 26, 2010.  Thus, absent some exception to the Massachusetts statute of limitations, any cause of action that accrued prior to November 26, 2004, is time-barred.

---

[10] As a consequence, any theory of anticipatory breach of contract would not only be insufficient on its own to state a claim, but it would also be ineffective against a defense of lack of sufficient ripeness on which to mount a declaratory judgment action.

30

The parties do not dispute that, for purposes of the present motion, the relevant statute of limitations is six years and that the cause of action began to accrue when the Swiss assets were returned.  Nor do they disagree about the underlying facts regarding asset return.  In this connection, the parties agree that the approximately $15 million now at issue was transferred in three tranches to escrow accounts in Ukraine in October 2000:

1) Tranche 1: Approximately $10.5 million, which was returned to the Ukrainian Treasury in March 2001.

2) Tranche 2: Approximately $4 million, which was returned to the Ukrainian Treasury in March 2009.

3) Tranche 3: Approximately $1.7 million, which was returned to the Ukrainian Treasury in April 2002.[11]

The parties do disagree, however, on the proper interpretation of the word "return" in the Agreements.  Ukraine argues that the assets were "returned" to Ukraine in 2000, when they were transferred from Switzerland to the Ukrainian Prosecutor General's Office.  UTICo, by contrast, argues (albeit circuitously) that the assets were not "returned" until they

---

[11] The Supreme Judicial Court has held that, when a party is contractually obligated to make separate payments, each failure to pay an obligation when due is treated as a separate cause of action for statute-of-limitations purposes.  *Flannery* v. *Flannery*, 705 N.E.2d 1140, 1143 (Mass. 1999).  Consequently, because each tranche of money could independently have triggered an obligation for Ukraine to pay, I will treat them as giving rise to separate claims for breach of contract.

were actually transferred to the Ukrainian Treasury.  UTICo also
argues that, even if its breach-of-contract action began to
accrue before November 2004, the statute of limitations should
be tolled.

      *a.   Accrual*

As a general matter, in a breach-of-contract case, "a cause
of action accrues when the contract is breached."  *Flannery* v.
*Flannery*, 705 N.E.2d 1140, 1143 (Mass. 1999).  In this case,
where wholesale repudiation of the May 1998 Agreement by Ukraine
has not been demonstrated, no actionable breach would occur
until Ukraine had declined to fulfill its side of the bargain
with respect to particular assets "returned to" Ukraine.  The
parties disagree about the proper interpretation of the May 1998
Agreement and, consequently, when Ukraine's obligation to pay is
triggered.[12]

---

[12] Similarly, much of UTICo's claim for declaratory relief that
might have survived the 2012 motion to dismiss now fails on
procedural grounds because it is not ripe.  *See UTICo I*, 898 F.
Supp. 2d at 325.  UTICo seeks a declaration that the April 30,
1999 Power of Attorney empowering UTICo to recover the
California real estate was in force until at least the denial of
UTICo's petition for certiorari by the U.S. Supreme Court in
2010.  However, such a declaration would be improper because
there is no immediate and real justiciable controversy on that
issue.  *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919
F.3d 638, 645 (1st Cir. 2019).  Ukraine does not argue that it
is not obligated to pay because that Power of Attorney expired
before June 2010.  The scope of that Power of Attorney does not
affect the outcome of this litigation.  Indeed, more
fundamentally, I have concluded that the issue is substantively
precluded as a result of the application of nonmutual collateral

Under Massachusetts law, "[i]f a contract . . . is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment." *Seaco Ins. Co.* v. *Barbosa*, 761 N.E.2d 946, 951 (Mass. 2002).  If, however, the contract "has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial." *Id*.  Ambiguities in the contract are to be resolved against the drafter, though this "rule of construction 'must give way to the primary and inflexible rule that . . . contracts are to be construed so as to ascertain . . . the true intention of the parties.'" *Shea* v. *Bay State Gas Co.*, 418 N.E.2d 597, 602 (Mass. 1981) (quoting *Teeples* v. *Tolson*, 207 F. Supp. 212, 215 (D. Or. 1962)).

To determine whether a contract is ambiguous, I "first examine the language of the contract itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties." *Bank* v. *Thermo Elemental, Inc.*, 888 N.E.2d 897, 907 (Mass. 2008).  "Contract language is ambiguous 'where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.'" *Id*. (quoting *President & Fellows of*

---

estoppel.  *See supra* Section III.B.1.a.  Accordingly, I deny UTICo's request for declaratory relief.

*Harvard College* v. *PECO Energy Co.*, 787 N.E.2d 595, 601 (Mass. App. Ct. 2003)).

The primary disagreement between the parties concerns the proper interpretation of the phrase "returned to Ukraine" in the May 1998 Agreement.  Ukraine encourages me to read this phrase to mean that UTICo's claims would start to accrue in 2000, when the Swiss assets were returned to Ukraine from Switzerland, even though the assets had not yet been transferred to the Ukrainian Treasury.  By contrast, UTICo argues that the assets were "returned" under the May 1998 Agreement only when they were formally transferred to the Ukrainian Treasury.  Under the European Convention on Human Rights and Ukrainian law, UTICo argues, when the Swiss assets were first transferred to Ukraine from Switzerland, they necessarily had to be held in escrow pending a formal adjudication in Ukrainian courts.  Only when the assets were transferred to the Ukrainian Treasury would Ukraine be able to access and use the money.

UTICo's reading of the May 1998 Agreement is persuasive and consequently I do not confront a genuine dispute of fact about the proper reading of the phrase "returned to Ukraine."  The May 1998 Agreement specifically states that any payment to UTICo's 12% commission "is not payable from the State budget of Ukraine but from the assets to be repatriated to Ukraine from outside of Ukraine."  Given this condition, the only reasonable reading of

the May 1998 Agreement is that it requires Ukraine to be able to use the recovered assets before its obligation to pay UTICo is triggered.  In other words, a reasonable factfinder would necessarily read the May 1998 Agreement as requiring the assets to be returned to the Ukrainian Treasury, in connection with UTICo's actions, before Ukraine is obligated to pay UTICo.[13]

This interpretation of the contract is material only with respect to tranche 2, which was returned to the Ukrainian Treasury in 2009.  Though UTICo goes to great lengths to contend that it frequently takes five to seven years for frozen assets to be returned and has adduced evidence on that point, it does not change the fact that tranche 1 and tranche 3 were *actually* adjudicated and returned to the Ukrainian Treasury by 2003. Accordingly, UTICo's cause of action with respect to tranches 1 and 3 is barred unless UTICo can show that the statute of limitations should be tolled, a question I will address in the next section.  However, I conclude UTICo is not statutorily barred from litigating with respect to tranche 2, which was returned to the Ukrainian Treasury in 2009.

---

[13] In any event, even if there were a genuine question of material fact about the meaning of the phrase "returned to Ukraine," I would view "returned to Ukraine" in the light most favorable to the non-moving party, in this case, UTICo, and my analysis on the merits would therefore be the same.

    *b.   Tolling*

With respect to tranche 1 and tranche 3 of the Swiss assets, UTICo argues that the statute of limitations should be tolled under the discovery rule.  I do not find this argument persuasive.

Massachusetts law allows for the statute of limitations in both tort and contract cases to be tolled when "'the facts,' as distinguished from the 'legal theory for a cause of action,' remain '*inherently unknowable*' to the injured party."  *Saenger Org.* v. *Nationwide Ins. Licensing Assocs.*, 119 F.3d 55, 65 (1st Cir. 1997) (quoting *Catrone* v. *Thoroughbred Racing Ass'ns of N. Am., Inc.*, 929 F.2d 881, 885 (1st Cir. 1991)) (emphasis in original).  The discovery "rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct."  *Bowen* v. *Eli Lilly & Co., Inc.*, 557 N.E.2d 739, 741 (Mass. 1990).

The rule allows the statute of limitations to be tolled when "an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury," *id.*, and continues to toll the limitations period if the plaintiff "remained unaware of his claim even after conducting reasonable inquiry."  *Cambridge Plating Co., Inc.* v. *Napco, Inc.*, 991 F.2d 21, 26 (1st Cir. 1993).  The

discovery rule applies to toll the statute of limitations in contract disputes, though it is rarely applied when the parties are on roughly equal footing and there is no evidence of fraudulent concealment. *See Melrose Hous. Auth.* v. *New Hampshire Ins. Co.*, 520 N.E.2d 493, 497 n.5 (Mass. 1988).

Consequently, the discovery rule would only apply to toll the statute of limitations here if one of the following were present: (1) the accrual of the cause of action "concerns a fact that was 'inherently unknowable' to the injured party"; (2) "a wrongdoer breached some duty of disclosure"; or, (3) "a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Patsos* v. *First Albany Corp.*, 741 N.E.2d 841, 846 (Mass. 2001). None of these three conditions is present here.

i.  Inherent Knowability

There is no evidence of record to suggest that Ukraine acted affirmatively to deceive UTICo and conceal the fact that the Swiss assets had been repatriated. Nor does UTICo suggest that Ukraine did anything more prior to the start of litigation than fail to disclose the existence of ongoing proceedings in both Switzerland and Ukraine with respect to the Swiss assets.

The record does not support UTICo's contention that the repatriation of assets to Ukraine was "inherently unknowable" information that UTICo could not have discovered until sometime

after November 2004.  *See Patsos*, 741 N.E.2d at 846.  Even if I credit UTICo's argument that, under ordinary circumstances, repatriation of assets takes five to seven years, there were still sufficient facts to put UTICo on notice that the Swiss assets had been repatriated.  As UTICo itself acknowledges, it was in frequent communication with the Ukrainian Prosecutor General's Office between 1998 and 2004, and at least some of its conversations with the Ukrainian Prosecutor General's Office during this time touched on the Swiss assets, even if the assets were not the focus of the communications.  UTICo could have asked about the status of the Swiss assets, but it failed to do so.

There is also evidence that several news outlets were reporting on the interaction between the Swiss authorities and the Ukrainian Prosecutor General's Office, and that this information was publicly available.  While UTICo argues that those reports were inaccurate, they were still sufficient to put UTICo on notice that something might be afoot and that inquiry would be called for to protect whatever rights UTICo may have had.

In his Rule 30(b)(6) deposition on behalf of UTICo, Mr. Lambert stated that UTICo was aware of the judgments of the Swiss courts in 2000, though it did not have a copy of those judgments.  Mr. Lambert also stated that UTICo had heard that

some of the Swiss assets had been returned to Ukraine in 2002.
All of this information was more than sufficient to put UTICo on
notice that "someone may have caused [it] injury." *Bowen*, 557
N.E.2d at 741.  More fundamentally, these facts do not support
finding as a matter of law that the breach-of-contract claim
turned on facts that were "'inherently unknowable' to the
injured party" such that the statute of limitations should be
tolled.  *Patsos*, 741 N.E.2d at 846.

### ii.  Duty to Disclose

There is no evidence of record to suggest that Ukraine was
under an affirmative obligation to disclose information.[14]
Neither the May 1998 Agreement nor the Powers of Attorney impose
any such duty on Ukraine.  At most, the Powers of Attorney allow

---

[14] Ukraine's failure to disclose information and to pay UTICo
promptly could conceivably form the basis for a breach-of-
contract action under the theory that Ukraine breached an
implied duty of good faith and fair dealing, but that is not the
theory of the case before me, and I have explicitly rejected
UTICo's attempt to introduce a good-faith-and-fair-dealing
argument at this stage of the litigation.  In any event, the
covenant of good faith and fair dealing is limited in scope to
the breadth of the contract.  *T.W. Nickerson, Inc.* v. *Fleet Nat.
Bank*, 924 N.E.2d 696, 704 (Mass. 2010).  The covenant "cannot
'create rights and duties not otherwise provided for in the
existing contractual relationship, as the purpose of the
covenant is to guarantee that the parties remain faithful to the
intended and agreed expectations of the parties in their
performance.'"  *Id.* (quoting *Uno Restaurants, Inc.* v. *Boston
Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004)).
Accordingly, even if I were to formally allow this argument, the
covenant of good faith and fair dealing would not impose on
Ukraine an affirmative obligation to disclose.

UTICo to act as Ukraine's agent abroad.  They do not impose on Ukraine an affirmative obligation to disclose.[15]

### iii. Fraudulent Concealment

UTICo has not explicitly argued that Ukraine fraudulently concealed the cause of action, but it has hinted at such an argument.  In any event, there is no cognizable fraudulent concealment to be found in the record here.  Under Massachusetts law, "mere silence is not fraudulent concealment." *Stetson* v. *French*, 72 N.E.2d 410, 412 (Mass. 1947).  To toll the statute of limitations, "there must be something in the nature of positive acts with intent to deceive."  *Id.*  UTICo has not provided any factual basis from which a reasonable factfinder could conclude that Ukraine intentionally concealed any cause of action arising from the repatriation of the Swiss assets.

* * *

In view of the foregoing analysis, UTICo cannot take refuge under the discovery rule to toll the statute of limitations for its breach-of-contract claims with respect to tranche 1 and

---

[15] Under the rules of agency, while an agent owes the principal an affirmative duty to disclose "all relevant facts that [the agent] 'should realize would be likely to affect the judgment of the principal,'" *Gagnon* v. *Coombs*, 654 N.E.2d 54, 62 (Mass. App. Ct. 1995) (quoting  Restatement 2d of Agency § 390 cmt. a)), the principal owes no parallel duty to the agent unless specified by contract, *see* Restatement 3d of Agency §§ 8.13-8.15.  The May 1998 Agreement and the Powers of Attorney impose no such duty here.

tranche 3 of the Swiss assets - the statute of limitations with
respect to these tranches has run.  Because I find as a matter
of law that the statute of limitations has not run with respect
to tranche 2 of the Swiss assets, I now turn to consider summary
judgment for tranche 2 on the merits of the breach-of-contract
claim.

        3.   Performance Under the Contract

        In order to defeat summary judgment for tranche 2, UTICo
must demonstrate that a reasonable factfinder could find not
only that the Swiss assets were "returned to Ukraine," but also
that they were returned "in connection with" the Powers of
Attorney executed by the Ukrainian Prosecutor General's Office.
For my analysis here, I proceed through the meaning of "in
connection with," the evidence that UTICo assisted with the
return of assets, and the evidence specifically that UTICo aided
in the Swiss investigation.  I am prepared to find that UTICo
fails immediately based on the meaning of "in connection with,"
though I also find UTICo fails even with this phrase interpreted
as it wishes.

        a.   *Interpreting the Agreement*

        Key to my analysis is the meaning of the phrase "in
connection with."  I am thus again tasked with interpreting the

parties' agreements and will follow Massachusetts contract law principles.

The Agreements themselves do not define what it means for assets to be returned "in connection with" the Powers of Attorney, and the phrase itself is vague.  It could mean that UTICo must have directly recovered the assets, or it could mean that UTICo provided information that helped in having those assets recovered.  If a contract's terms are ambiguous, as is the case here, "summary judgment is appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Farmers Ins. Exch.* v. *RNK*, 632 F.3d 777, 784 (1st Cir. 2011) (quoting *Bank* v. *Int'l Bus. Machs. Corp.*, 145 F.3d 420, 424 (1st Cir. 1998)).  I turn then to the extrinsic evidence before me, specifically an admission by UTICo.

During the 1999 deposition of George Lambert[16] in *UTICo* v. *Kiritchenko*, No. C99-3073-CAL (Nov. 15, 1999) [Dkt. No. 226-14 at 138], the parties agreed that the 12% commission was for assets that UTICo directly recovered.  Of course, at later points UTICo has sought through argument and contentions in pleadings to suggest a different definition.[17]  However, I

---

[16] George Lambert is referred to as Youry Lambert in the 1999 deposition.

[17] At the summary judgment motion hearing in the instant case, counsel for UTICo said that UTICo providing assistance would

conclude the admission during Mr. Lambert's 1999 deposition establishing that a commission would be due only for assets UTICo directly recovered provides an adequate and independent ground to dispose of UTICo's claim of ambiguity.

Still, for the purposes of this summary judgment motion, I will alternatively interpret "in connection with" in the light most favorable to the non-moving party and construe the language using UTICo's current definition of "helpful" in recovering the assets.  With that, I next consider evidence that UTICo assisted in the recovery of assets.

### b.   *Evidence that UTICo Assisted in Recovery*

I start my analysis here with a description of the vagueness problems that suffuse UTICo's argumentation.  I then walk through the evidence that might support UTICo's claims.

### i.   Vagueness in UTICO's Argumentation

UTICo is extremely vague about how it assisted in recovering assets.  In its briefing, UTICo points to the "transcript of the January 24-25, 2019 deposition," which

-------------------------------------------------------------------

mean "[a]ny information . . . [t]hat would be helpful in determining the ownership of those assets by Kyrytschenko and Lazarenko."  Furthermore, in its complaint, UTICo states it was to have a 12% interest in assets "frozen by UTICo" or that were recovered because of UTICo's "assisting [the Ukrainian Prosecutor General's Office] in the development of evidence of the fraud."

supposedly "contains many examples of the work accomplished."
UTICo also points to the Lambert Declaration, which supposedly
"contains more than 100 exhibits showing the work product
transferred to the [Ukrainian Prosecutor General's Office] and
used in the Swiss proceedings."  UTICo does not identify which
of its 228 exhibits is the "January 24-25, 2019 deposition" or
which pages of that deposition to consider.

During the summary judgment hearing on this motion, in an
effort to focus discussion, I asked counsel for UTICo to point
me to the two best exhibits it relies on in support of its
contention that UTICo assisted in recovering the assets.
Counsel identified seven exhibits.  However, he could not point
me to the relevant parts of these exhibits.  Instead, he
informed me that "all these exhibits taken together add a little
something" to the argument.

### ii.  Documents Flagged by UTICo

I have carefully reviewed the seven documents that UTICo
identified as its most helpful documents [Dkt. No. 226, Exs. 24,
36-38, 54, 64, and 65] and they neither individually nor
together constitute meaningful evidence on which a reasonable
jury could rely in finding for UTICo.

Exhibit 37 consists mostly of illegible photocopies of
passports.  I fail to see how this document shows that UTICo
assisted in recovering assets.

44

Exhibit 54 is a 239-page document, the first page of which is called "the British Virgin Islands' International Business Companies Act" and is related to Amazon Import and Export, Inc. UTICo has not directed me to look at any particular part of this document.  Nor has UTICo explained the importance of the document in any way aside from saying that it, along with their other 227 exhibits, "add[s] a little something" to their argument.  I fail to see how this document shows that UTICo assisted in recovering assets.

The other five exhibits UTICo specifically cited are similarly inscrutable as evidence of UTICo's assistance in the recovery of the assets at issue in this motion.

### iii. Lambert Declaration

UTICo has pointed me, in a very general way, to the Lambert Declaration for evidence.  I have reviewed all documents cited in this declaration and found only a few of note.

Mr. Lambert references Exhibit 154-4(89).  This exhibit shows pages of screenshots of files that Mr. Lambert says UTICo submitted to the Ukrainian Prosecutor General's Office.  Mr. Lambert adds that, "On a number of occasions, General Zherbitsky and Colonel Yakubovsky called me on the phone and discussed the data and documents.  I heard on the telephone from General Zherbitsky and Colonel Yakubovsky an acknowledgement and appreciation that the documentary evidence provided by UTICo was

of exceptional importance for the [Ukrainian Prosecutor General's Office]."

Mr. Lambert next references Exhibit 154-4(90), records of UTICo's phone bills, which purport to show that "UTICo's officers initiated international phone calls to the UPGO in Kyiv, with a frequency from 11 to 18 calls per month, with the last call on June 10, 2010." Mr. Lambert also says that the Ukrainian Prosecutor General's Office called UTICo about as often.

Mr. Lambert references Exhibit 154-4(99), an email he sent to the Ukrainian Prosecutor General's Office's Colonel Yukobovsky, and a photograph of a package that Mr. Lambert sent to Yukobovsky purportedly containing a CD. Mr. Lambert says that General Zherbitsky called him to thank him for the extraordinary value of the information on the CD and expressed "gratitude on behalf of First Deputy Prosecutor General Renat Kuzmin."

Mr. Lambert refers to the recorder office's records regarding a piece of property that Lazarenko owned, which was attached in a legal proceeding in 2000. He also says that:

> UTICo was instrumental in locating, identifying and
> investigating the sources of the acquisition of that
> realty by Lazarekno (for $6,750,000) from an account
> of Lady Lake Ltd., an Antiguan company, at SCS Bank in
> the Bahamas. UTICo established through evidence that
> Lady Lake was held through the bear[er] shares and was
> under Lazarenko's control. UTICo's attachment was

46

taken over by a lien of the DOJ. On information and
belief, the sales proceeds for that property are among
the assets being now claimed by Ukraine.

Although this explanation could be (and perhaps should be) more
detailed, it constitutes admissible, if not necessarily
material, evidence.

### iv.   Letter to the President of Ukraine

UTICo also directs me to a letter from the Prosecutor
General of Ukraine to the President of Ukraine dated September
15, 2003.  In this letter, the Prosecutor General says that,
"through the assistance of UTICo, money of Lazarenko P.I. was
located and blocked for the amount of more than $270 million in
the banks of Guernsey, Antigua, and of other countries."  This
was done "on the basis of the agreement" that UTICo formed with
the Ukrainian Prosecutor General's Office.

### v.   Analysis

In sum, the evidence a reasonable jury could arguably
credit is as follows:

1. UTICo sent the Ukrainian Prosecutor General's Office many
   documents that the Ukrainian Prosecutor General's Office
   said were "of exceptional importance for the Ukrainian
   Prosecutor General's Office" and "extraordinar[il]y
   valu[able]" to the Ukrainian Prosecutor General's Office.

2. UTICo and the Ukrainian Prosecutor General's Office called
   each other frequently.

3. UTICo was instrumental in locating and investigating the sources of the acquisition of an approximately 5-6.75-million-dollar piece of property owned by Lazarenko.

4. The Prosecutor General said that, through UTICo's assistance, $270 million was located and blocked.

Based on this evidence, a reasonable jury could find that UTICo assisted in locating and blocking assets.

        c.   *Role in Recovery of Swiss Assets*

Even if taken as fact that UTICo assisted in the recovery of assets, this is not enough to establish that UTICo is entitled to compensation. To fulfill the contract, any help UTICo gave to Ukraine must be demonstrated to have been connected to assets returned to the country.

UTICo argues circuitously that the Swiss assets were recovered as a result of UTICo's work in identifying and freezing assets in Antigua, Panama, the British Virgin Islands, the Bahamas, Barbados, the Isle of Man, Cyprus, and the Cayman Islands. In particular, UTICo argues that Ukraine transmitted at least some of this information to Swiss authorities along with its letters rogatory, though it is not clear from the record which documents were actually transmitted. UTICo argues that this evidence served as the basis for subsequent action in the Swiss courts and led to the return of the Swiss assets.

48

However, UTICo does not contest that it did not participate directly in the Swiss investigation; nor does it argue that it provided documents or information directly to Swiss authorities. Instead, in arguing that the Swiss assets were returned "in connection with" the Powers of Attorney executed between 1998 and 2000, UTICo points to a series of communications with the Ukrainian Prosecutor General's Office, including several that took place after the Swiss assets had been returned to Ukraine, in which UTICo asserts in a characteristically conclusory and self-serving fashion that it provided the Ukrainian Prosecutor General's Office with information relevant to the Swiss prosecutions.

By contrast, non-speculative evidence establishes as a matter of law that the Swiss authorities conducted an independent investigation into Mr. Lazarenko's and Mr. Kiritchenko's holdings in Switzerland.  The Swiss assets were seized after a criminal prosecution in Switzerland, and there is no evidence to suggest that either the Ukrainian Prosecutor General's Office or UTICo was directly involved in the prosecution itself.  There is also no evidence that UTICo had any involvement in the return of the Swiss assets once they had been seized pursuant to the Swiss judgments.

The assets that were recovered as a result of an investigation and criminal prosecution by Swiss authorities and

then returned to Ukraine were returned as a result of what appears to be diplomatic negotiations.  They were not returned because of UTICo's assistance.  UTICo was not "helpful" in any cognizable sense with this asset return.  This is true even if UTICo did, in fact, provide some evidence to the Ukrainian Prosecutor General's Office concerning the ownership of the Swiss assets.

Consequently, I find as a matter of law that the Swiss assets were not returned to Ukraine "in connection with" the Powers of Attorney.  Thus, I will also grant summary judgment to Ukraine on the tranche 2 dimension of the breach-of-contract claim.

### IV. UTICo'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

On July 22, 2019, five months after the summary judgment filing deadline, UTICo submitted a Cross-Motion for Partial Summary Judgment.  Having granted summary judgment for Ukraine, it may appear supererogatory for me to take up UTICo's belated cross-motion for "partial" summary judgment.  Nevertheless, I will do so to address fully the issues in this case, noting at the outset that the lack of timeliness is sufficient independent grounds, on which I rely, for denying UTICo's cross-motion.  I conclude the cross-motion fails on the merits as well.

### A.  *Ukraine's Motion to Strike*

UTICo's cross-motion was submitted without reasonable

explanation over five months late.  Accordingly, in its response
to UTICo's cross-motion, Ukraine first brings a motion to strike
the cross-motion altogether, which I will grant.  The Amended
Scheduling Order had required motions for summary judgment to be
submitted by February 8, 2019.  UTICo filed its motion on July
22, 2019.  It did so without requesting leave for a late filing
from the Court.

This belated cross-motion was not the first time UTICo
disregarded this Court's rules; as I told the parties at a
hearing on May 6, 2019, UTICo's pattern of disregard of
procedural regularity was itself a violation of court norms and
orders.  UTICo's justification for such disregard is formulated
in UTICo's most recent filing.  It asserts that on several
occasions, "Defendants ask[ed] leave to exceed the page limit,
[and] UTICo merely duplicat[ed] request[s] for the identical
relief, to avoid prejudice by less page volume."

It is not "prejudice by less page volume" which has doomed
UTICo's cross-motion.  I deny UTICo's cross-motion because of
its disregard, which I decline to ignore, of reasonable
deadlines, and because the lack of merit to its arguments is
manifest no matter how they are framed or reframed.

**B.   *Cross-Motion Merits***

I now turn to address in the alternative UTICo's arguments
on the merits in order to ventilate the issues fully.

51

1.   Scope of the Cross-Motion

The cross-motion was said to be "limited" to the issue of "Defendants' liability to provide remuneration for work and expenditures undertaken by UTICo pursuant to its Agreements with [the Ukrainian Prosecutor General's Office]."  It is not clear what UTICo means by this, because in its cross-motion, UTICo requests "a summary decision that Defendants disgorge 12% of the assets factually obtained by their treasury in 2001-2009, ca. $12,355,641, that Defendants confessed their Treasury had recovered in three tranches, namely UTICo's entitlement to, at least, $1,482,676 plus interest."  UTICo is thus asking for summary judgment on the issue of breach of contract and for an award of damages.

In effect then, the cross-motion is not limited at all. There is nothing more that a jury could determine.  A jury would not decide preclusion or the statute-of-limitations issues, both of which need to be resolved before reaching the question on the merits.  This I have done in explaining my grant of Ukraine's motion for summary judgment.  I thus treat UTICo's motion as a reframing of the issues resolved by the explanation of my grant of Ukraine's summary judgment motion.

2.   Standard of Review

The standard for a cross-motion for summary judgment is the same as the summary judgment standard.  *Adria Int'l Grp., Inc.*

v. *Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001).  I
"employ the same standard of review, but view each motion
separately, drawing all inferences in favor of the nonmoving
party."  *Cooper*, 881 F.3d at 249–50 (quoting *Fadili* v. *Deutsche
Bank Nat'l. Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014)).  It
bears repeating that the party seeking summary judgment has the
burden of "identifying those portions of [the record] which it
believes demonstrate the absence of a genuine issue of material
fact."  *Celotex*, 477 U.S. at 323.

### 3.   UTICo's Arguments

UTICo's main argument in its cross-motion is that Ukraine
admitted that it owed money ("remuneration") to UTICo because it
acknowledged that UTICo had "already accomplished" work.  In the
"Summary of Points" section of its cross-motion, UTICo contends
the following: the existence of an agreement, an admission by
the Ukrainian Prosecutor General's Office that UTICo fulfilled
its duties, and a finding by the Ukrainian Supreme Court that
UTICo earned renumeration.  I address these points in turn.

### a.   *Existence of Agreement*

First, UTICo contends "the parties agree that the Ukrainian
Prosecutor General's Office initially entered into the Agreement
in May 1998."  I take this point as fact - the May 1998
Agreement was executed, and a number of Powers of Attorney
flowed from it.

b.   *Alleged Admission*

Next, UTICo contends the Ukrainian Prosecutor General's Office "admitted" on "numerous occasions" that "there was a 'commission agreement' to accomplish works and that UTICo 'accomplished those works,'" and in this connection UTICo has independently shown that it has "implemented the Agreements and the Powers of Attorney."

I can dispense easily with the second half of this point. It is irrelevant whether UTICo implemented the Agreements and Powers of Attorney unless UTICo's implementation was "in connection with" a return of the stolen assets to Ukraine.

The first half of this point is that the Ukrainian Prosecutor's Office "admitted" that UTICo fulfilled its agreement with Ukraine.  In that connection, UTICo references Dkt. 226, Ex. 172, page 2.  This is the Ukrainian Prosecutor General's Office's October 17, 2003 application[18] for reconsideration of a Pechersk court decision invalidating the August 11, 1999 assignment.  The Ukrainian Prosecutor General's Office stated that it was submitting this application for reconsideration in light of developing circumstances, namely that the President and Prime Minister of Ukraine had given authority to the Ukrainian Prosecutor General's Office to

---

[18] The document is called an "application" but is essentially what United States courts would call a brief.

54

protect Ukraine's interest in foreign judicial bodies.  This new authority, the Ukrainian Prosecutor General's Office argued, authorized that Office to assign Kiritchenko and Lazarenko's stolen assets to UTICo.

The application for reconsideration includes a statement that has been translated differently by the parties in the present litigation.  Moreover, the Ukrainian Prosecutor General's Office had made what appears to be the same characterization, translated differently, in an October 3, 2003 appellate statement in that same case.  The three translations, viewed side by side, are provided in an appendix to this memorandum.

The differences in translation are instructive.  As the bolded language throughout these translations shows, the same word can be translated "fulfill," "act," "have to be done," "undertake," "execute," and "consummate."  The way this word is translated materially changes the meaning of the paragraph, and the translation thus creates a dispute of material fact about the accuracy of translation that I cannot resolve at the summary judgment stage.  For now, I must take disputed material facts such as these in the light most favorable to the non-moving party.  Using the Ukrainian Prosecutor General's Office's translation "executed," I find no material admission.  I find, instead, that the Ukrainian Prosecutor General's Office admitted

only that it had an agreement with UTICo which the latter was working to accomplish.

Nor does the word "fulfilled" in the application for reconsideration give me pause about the appropriateness of awarding summary judgment to Ukraine.  It is generally understood that "fulfillment of contract" means fulfilling all obligations under a contract.  But UTICo did not have any obligations under the Agreement.  It was authorized to recover assets, but it was not required to do so.  The only party with obligations under the Agreement was the Ukrainian Prosecutor General's Office, which was required to pay UTICo if UTICo recovered assets and returned them to Ukraine.  Thus, if the Agreement was fulfilled in this context, that either means that in connection with successful return of assets, UTICo was paid by Ukraine, or that neither party did the necessary work because neither was obligated to do so.  The point is simply that saying that the Ukrainian Prosecutor General's Office admitted the Agreement was "fulfilled" is essentially meaningless on the facts in this contractual regime.

I have explored the meaning of the word "fulfilled" here because UTICo has premised its entire argument on these sorts of quotations, which it calls "admissions" and directs my attention to in a series of lengthy charts without any corresponding explanation.  [Dkt. No. 263 at 11-16].  Each of these materials,

UTICo tells me repeatedly, "should be considered as admissions in conjunction, complementing each other," [Dkt. No. 263 at 11] presumably because each one "adds a little something."

My obligation here is to examine whether UTICo's asserted "admissions" add anything to their argument. I find that they do not. To prevail on a motion for summary judgment — not to mention provide something sufficient to defeat Ukraine's motion for summary judgment — UTICo must offer more than snippets from out-of-context Ukrainian court documents whose relevance to this case depends on who is translating them. The question is not whether UTICo has proffered mistranslations of the words of purported admissions by the Ukrainian Prosecutor General's Office. I am not in a position to determine as a factual matter whether the particular words are properly translated in one or another of the evidentiary proffers. Rather, the question is whether UTICo did provide assistance in connection with the actual recovery of the Swiss Assets, and whether such assistance has been evidenced sufficiently, such that a different translation of one word will not bring the entire argument toppling to the ground.

c.   *Ukrainian Supreme Court Ruling*

Third, UTICo says Ukraine's "admissions culminated in the ruling of Ukraine's Supreme Court on June 14, 2006 (which Defendants failed disclose to Plaintiffs), affirming that UTICo

had earned remuneration for the works '. . . already accomplished.'"  At best this point reflects a misunderstanding of Massachusetts contract law – and at worst it deliberately attempts to mislead.

The Ukraine Supreme Court said, with respect to the California real estate assets that "[b]y virtue of the Instrument of the Ukrainian Prosecutor General's Office of Ukraine, dated August 11, 1999, . . . compensation was granted to the Firm for the works that had already been accomplished."[19]

Thus, effectively, UTICo contends the Supreme Court of Ukraine acknowledged that pursuant to the May 1998 Agreement UTICo had already accomplished work that benefited Ukraine in connection with the California real estate.  Indeed, the August 11, 1999 Agreement regarding those assets begins: "Taking into consideration the work accomplished by, and the assistance from, your company . . . we confirm the consent that the Ukraine side assigns the material claims upon the real estate property mentioned above to the firm UTICo. . . ."

The apparent acknowledgement of UTICo's work "already accomplished" in this agreement is either an expression of gratitude or an explanation about why Ukraine has assigned the real estate to UTICo.  However, I have found that the judgments

---

[19] This language appears as translated by UTICo.

of the American federal courts in California preclude any finding that assignment was valid.

With statements about what UTICo is owed for works that it has already accomplished, UTICo seems to be hinting at either some notion of compensatory fairness as a claim by which it should be paid for work that it previously accomplished, or suggesting that the Ukrainian Prosecutor General's Office, in acknowledging UTICo's prior work, admitted that UTICo is owed money for that work.

These arguments, to the extent they can be discerned, fail. There is no "past consideration" recognized in Massachusetts contract law.  *See, e.g.*, *Greater Bos. Cable Corp.* v. *White Mountain Cable Const. Corp.*, 604 N.E.2d 1315, 1317 (Mass. 1992); *Stroscio* v. *Jacobs*, 310 N.E.2d 383, 384 (Mass. App. Ct. 1974). And while UTICo may or may not have been fairly compensated for its work prior to any of the Agreements, the Agreements themselves do not entitle UTICo to any compensation for what UTICo had "already accomplished" before the Agreements were executed.

### V. CONCLUSION

For the reasons set forth above, I GRANT Ukraine's motion [Dkt. No. 219] for summary judgment in its entirety and DENY UTICo's cross-motion [Dkt. No. 263] for partial summary judgment.  I DENY UTICo's motion to amend its complaint [Dkt.

No. 259], and I affirm Magistrate Judge Boal's Order [Dkt. No. 215] denying UTICo's motion to compel further discovery [Dkt. No. 206] and Magistrate Judge Boal's Order [Dkt. No. 216] denying UTICo's motion [Dkt. No. 209] to amend the discovery schedule.  I thereupon DENY UTICo's motion [Dkt. No. 225] for relief under Rule 56(d).  In addition, I note Magistrate Judge Boal's Report and Recommendation [Dkt. No. 218] but DENY Ukraine's motion [Dkt. No. 204] for sanctions as moot.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

**Appendix**

| *10/17/03 Ukrainian Prosecutor General's Office Application for Reconsideration Ukraine's translation* [Dkt. No. 49-2 at p.4] | *10/17/03 Ukrainian Prosecutor General's Office Application UTICo's translation* [Dkt. 226-12 Ex. 172] | *3/10/03 Ukrainian Prosecutor General's Office Appellate Statement UTICo's translation* [Dkt. 226-12 Ex. 170] |
|---|---|---|
| In accordance with Articles 42, 387 of the Civil Code of Ukraine, there was a commission agreement between the Ukrainian Prosecutor General's Office and UTICo under which one side (agent by appointment) shall undertake **certain legal actions** on behalf of and at the expenses of the other side (principal).  The Power of Attorney #12-11015/97, dated April 30, 1999, determines the subject and scope of work which **have to be done** by the agent by appointment, UTICo.  The letter #06-11015/97, dated August 11, 1999, determines the order of payment with UTICo for the work done.  The firm UTICo, by virtue of powers given to it, embarked on accomplishing the works, did them in a | Between the Ukrainian Prosecutor General's Office and the firm UTICo, there has been, in accordance with Article 42, 287 of the Civil Code of Ukraine, the commission agreement, by virtue of which one side (the entrusted party) undertakes to **act** in the name of the other and at the expense of the other side (the entrusting party) undertaking certain legal actions.  The Power of Attorney No. 12-11015.97 of April 30, 1999 determined the subject and the scope of works that the entrusted party, the firm UTICo was to **undertake**.  The instrument No. 06-11015/97 of August 11, 1999 determined the order of the settlement for the work by the firm UTICo.  The firm UTICo in accordance | Thus, in this case, in accordance with Articles 42, 287 of the Civil Code of Ukraine, there was a commission agreement, in accordance with which one side (the agent, the entrusted party) undertakes to **fulfill** in the name and the expense of the other side (the principal, the entrusting party) the certain legal actions. The power of attorney No. 12-11015/97 of April 30, 1999 determined the matter and the scope of the work for the entrusted party, the firm UTICo, which it was necessary to **fulfill**.  The document No. 06-11015/97 of August 11, 1999 determined the method of payment due to the firm UTICo for the work it had implemented.  Based on the powers |

| | | |
|---|---|---|
| certain amount, and so, pursuant to Article 42 of the Civil Code of Ukraine, the agreement shall be deemed **executed.** | with the powers given to it embarked on accomplishing those works; it accomplished those works **in** the certain volume, by virtue of which under Article 42 of the Civil Code of Ukraine that agreement is deemed **fulfilled.** | granted to it, the firm started to implement those works, carried those out in the certain volume, therefore pursuant to Article 42 of the Civil Code of Ukraine, the agreement must be deemed **consummated.** |